UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| JODIANNE NOVELLA, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:10-CV-0048 (JCH) |
| v. | : | |
| CITY OF NEW HAVEN | : | JULY 28, 2011 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 27)**

**I.  INTRODUCTION**

Plaintiff, Jodianne Novella, brings this suit against the City of New Haven ("the City"), claiming that her supervisors subjected her to retaliation at her job at the New Haven Police Department.  Specifically, Detective Novella claims she was subjected to retaliatory harassment after she filed an internal complaint of sexual harassment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.* ("Title VII").  The City filed for summary judgment, claiming that Detective Novella cannot make out a prima facie case for retaliation.

**II.  FACTUAL BACKGROUND[1]**

The City first hired Detective Novella in 1992 as a police dispatcher.  Def.'s Local Rule 56(a)(1) Stmt. ¶ 1 (hereafter "L.R. 56(a)(1) Stmt."); Local Rule 56(a)(2) Stmt. ¶ 1 (hereafter "L.R. 56(a)(2) Stmt.").  Thereafter, Detective Novella attended the New Haven Police Academy and was hired as a police officer in 2000.  L.R. 56(a)(1) Stmt. ¶ 2; L.R. 56(a)(2) Stmt. ¶ 2.  In January 2008, Detective Novella filed a complaint of sexual harassment by another officer, Thomas Benedetto.  See L.R. 56(a)(1) Stmt. ¶ 3; L.R.

---

[1] The court sets forth here the material facts not in dispute and facts proposed by the parties that are supported by evidence in the record.

1

56(a)(2) Stmt. ¶ 3. Detective Novella complained that Officer Benedetto made offensive gestures with his tongue and told her to "give it up" on two occasions in December 2007 and once in January 2008. L.R. 56(a)(2) Stmt. Issues of Material Fact ¶ 6 (hereafter "L.R. 56(a)(2) Stmt. Disputed Issues"). She also complained that, on another occasion, a different officer commented that she was wearing a white jacket, and Officer Benedetto responded, "Yeah, as pure as the driven slut." See L.R. 56(a)(1) Stmt. ¶ 3; L.R. 56(a)(2) Stmt. ¶ 3; Novella Deposition at 33 ("Novella Depo."). After that incident, Detective Novella contacted the supervisor on duty, Sergeant Johannes. Novella Depo. 34. An internal affairs investigation revealed that, while some witnesses heard "slut," others heard Officer Benedetto say "slush." L.R. 56(a)(1) Stmt. ¶ 4; L.R. 56(a)(2) Stmt. ¶ 4. Officer Benedetto was reprimanded. L.R. 56(a)(1) Stmt. ¶ 5; L.R. 56(a)(2) Stmt. ¶ 5.

Although Detective Novella had previously been assigned to a solo car, following her complaint regarding Officer Benedetto's behavior, Lieutenant Kelly, the shift commander, took Novella's car away several times and reassigned it to someone else, causing Detective Novella to have to ride with other officers. L.R. 56(a)(2) Stmt. Disputed Issues ¶¶ 22–24; Novella Depo. at 38. Also following her complaint regarding Officer Benedetto's behavior, trash was placed on Detective Novella's personal car while it was parked in the police department parking lot, and on the same day, Detective Novella's payroll check was ripped open in her work mailbox. L.R. 56(a)(2) Stmt. Disputed Issues ¶¶ 32–33; Novella Depo. at 47.

In January or February of 2008, Detective Novella requested a transfer to the Statewide Narcotics Task Force, which resulted in her receiving a pay increase to that

2

of a detective.  L.R. 56(a)(1) Stmt. ¶¶ 7–8; L.R. 56(a)(2) Stmt. ¶¶ 7–8.  During her time on the Task Force, Detective Novella maintains that Lieutenant Kelly yelled at her on two separate occasions, singling her out in front of others.  See L.R. 56(a)(2) Stmt. ¶¶ 38–45.  First, after a community event where Detective Novella had been wearing her uniform, Lieutenant Kelly waved his arms at Detective Novella and continually asked her why she had worn her uniform to the event, even after Detective Novella explained that another Lieutenant had given her permission to wear the uniform.  See Novella Depo. 70–71.  This occurred in front of Detective Novella's co-workers.  See id. at 72.  Second, on July 31, 2008, Detective Novella's supervisor asked her to call for two patrol cars to assist in a raid.  L.R. 56(a)(2) Stmt. Disputed Issues ¶ 38.  After Detective Novella contacted the dispatcher, in accordance with what she believed to be proper procedure, Lieutenant Kelly called Detective Novella out of a van and proceeded to yell at her in front of several troopers for skirting the chain of command.  See Novella Depo. at 61.

In January 2009, Detective Novella was promoted to detective and assigned to the tactical narcotics unit.  L.R. 56(a)(1) Stmt. ¶ 10; L.R. 56(a)(2) Stmt. ¶ 10.  Since being assigned to the Tactical Narcotics Unit, Detective Novella has been treated in a degrading manner by Lieutenant John Velleca and Sergeant Robert Criscoulo.  L.R. 56(a)(2) Stmt. Disputed Issues ¶ 49.  Specifically, Lieutenant Velleca has embarrassed and insulted her in front of co-workers on several occasions, and labeled her as "a complainer."  See Novella Depo. 140–145; Pelletier Deposition at 19–20 (hereafter "Pelletier Depo.").  On one occasion, department representatives attended a meeting in Newport and several officers, including Detective Novella, were in Lieutenant Velleca's

hotel room.  Id. 145–46.  Detective Novella went to use the restroom, and while she was using the bathroom, Lieutenant Velleca opened the door and held it open while her other co-workers laughed.  See id.

## III.     STANDARD OF REVIEW

A motion for summary judgment "may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law."  In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  Thus, the role of a district court in considering such a motion "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id.  In making this determination, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 274 (2d Cir. 2009).

"[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  United Transp. Union v. Nat'l R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'"  Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (quoting Fed. R. Civ. P. 56(e)).  "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir.2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also Havey v. Homebound Mortg., Inc., 547 F.3d 158, 163 (2d Cir.

2008) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)) (stating that a non-moving party must point to more than a mere "scintilla" of evidence in order to defeat a motion for summary judgment).

**IV.     DISCUSSION**

To set forth a prima facie case for retaliation, a plaintiff must demonstrate "(1) that she participated in an activity protected by Title VII, (2) that her participation was known to her employer, (3) that her employer thereafter subjected her to a materially adverse employment action, and (4) that there was a causal connection between the protected activity and the adverse employment action." Kaytor v. Electric Boat Corp., 609 F.3d 537, 552 (2d Cir. 2010). At the summary judgment stage, a plaintiff is only required to present "a minimal amount of evidence" to support her claim. See id.

A.     Protected Activity

Filing a formal complaint of sexual harassment is a protected activity under Title VII. See Kotcher v. Rosa & Sullivan Appliance Ctr., Inc., 957 F.2d 59, 65 (2d Cir. 1992). The City does not contest that Detective Novella's complaint in 2008 to internal affairs regarding sexual harassment was a protected activity under Title VII. See Mem. Supp. Mot. Summ. J. at 4. Accordingly, Detective Novella has presented evidence sufficient for a reasonable jury to conclude that she participated in an activity protected by Title VII.

B.     Whether Her Participation was Known to her Employer

Next, Detective Novella must show that her employer knew of her participation in a protected activity. Kaytor, 609 F.3d at 552. To satisfy this knowledge requirement, Detective Novella is only required to show "general corporate knowledge" of protected

5

activity. See Gordon v. New York City Bd. of Educ., 232 F.3d 111, 116 (2d Cir. 2000); Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1178 (2d Cir. 1996) (holding that knowledge is "easily proved" where an employee complained to an officer of the company and maintained the complaint throughout a subsequent investigation). The City argues that Detective Novella has not presented any evidence that the individuals who she claims retaliated against her knew of her complaint. See Mot. Summ. J. at 5. Even if this were the case, however, it is undisputed that Detective Novella made a complaint of sexual harassment and internal affairs conducted an investigation. L.R. 56(a)(1) Stmt. ¶¶ 3–4; L.R. 56(a)(2) Stmt. ¶¶ 3–4. Consequently, Detective Novella has offered evidence that would allow a reasonable jury to conclude that her employer was aware of her protected activity.

  C. Materially Adverse Employment Action

Detective Novella may demonstrate a materially adverse employment action by showing a "materially adverse change in the terms and conditions of [her] employment," including sufficiently severe "unchecked retaliatory co-worker harassment." See Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 446 (2d Cir. 1999), *abrogated on other grounds by* Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 123 (2006). Conduct that is severe or pervasive enough to create both an objectively and subjectively hostile work environment may alter the terms and conditions of employment and constitute a materially adverse change. See Harris v. Forklift Sys. Inc., 510 U.S. 367, 370 (1993); Richardson, 180 F.3d at 446 (finding an employee had alleged facts sufficient to support a Title VII retaliation claim where she had a rubber band shot at her, and found manure in her parking space, hair in her food, and

6

scratches on her car).  A court must look at all the circumstances to determine whether certain conduct is discriminatory; however, "'simple teasing,' offhand comments, and isolated incidents" will generally not constitute discriminatory changes in a work environment.  See Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998).  An employer may be accountable for such retaliatory conduct if the employer knows about the harassment but fails to act to stop it.  See Richardson, 180 F.3d at 446.

Detective Novella asserts that soon after she filed her internal affairs complaint, she began experiencing retaliatory conduct from her co-workers and supervisors.  In one instance, someone placed trash on Detective Novella's personal vehicle while it was parked in the police department parking lot and ripped open her paycheck on the same day.  See Mem. Opp. Mot. Summ. J. at 6; Novella Depo. 46–48.  Additionally, Detective Novella asserts that following her complaint, her solo car was taken away far more frequently, forcing her to ride with other officers.  See Mem. Opp. Mot. Summ. J. at 7–8.  Finally, Detective Novella contends that, on two separate occasions in 2008, she was reprimanded in front of her co-workers.  First, on June 23, 2008, Detective Novella contends that Lieutenant Kelly yelled at Detective Novella for wearing her uniform to a community event, even after Detective Novella informed Lieutenant Kelly that she had received permission to do so from another Lieutenant.  See Novella Depo. 70–75.  Second, on July 31, 2008, Detective Novella asserts that Lieutenant Kelly yelled at her in front of other officers after she had requested assistance on a raid, despite her following what she believed to be proper procedure.  See id. at 9–10.

In addition, Detective Novella claims that following her transfer to the Tactical Narcotics Unit, Lieutenant Velleca regularly spoke to Detective Novella in a sarcastic

7

and demeaning tone, and often characterized her as a complainer. See id. at 11–15. Lieutenant Velleca also questioned Detective Novella's qualifications in front of other officers on several occasions, telling her she was "no narcotics cop" and pointing out to others that Detective Novella had only made three arrests in her career. See id. at 13–15.

Finally, Detective Novella contends that, while attending a class with the rest of her Unit in Newport, Rhode Island during November 2009, she attended a gathering in Lieutenant Velleca's hotel room with the rest of the Unit. Detective Novella claims that while she was using the bathroom, Lieutenant Velleca opened the door and held it open, while her co-workers laughed. Novella Depo. 145–47.

The facts set forth by Detective Novella raise a material issue of fact for a jury. Given the facts alleged by Detective Novella, a reasonable jury could find that the way Detective Novella's co-workers and supervisors treated her went beyond simple teasing or isolated incidents and constituted co-worker harassment that materially changed the terms and conditions of Detective Novella's employment following her internal affairs complaint.

### D. Causal Connection

Finally, Detective Novella must present evidence sufficient to allow a reasonable jury to find a causal connection between her protected activity and the employment action; in this case, the alleged harassment by her co-workers. See Kaytor, 609 F.3d at 552. Close temporal proximity between Detective Novella's protected activity and the adverse employment action may be sufficient to establish a causal connection. See id. Proof regarding individuals' lack of knowledge of the protected activity is admissible,

however, to show the lack of a causal connection between the protected activity and the employment action.  See Gordon, 232 F.3d at 117.  Even if the agent denies direct knowledge of the protected activity though, a jury may find retaliation if the circumstances demonstrate that the agents had knowledge of the protected activities.  See id.

Detective Novella contends that the behavior she complains of began very soon after she filed her internal affairs complaint in early 2008, and continued unabated through 2009.  See Mem. Opp. Mot. Summ. J. at 4–16.  Due to this temporal proximity, Detective Novella argues, a reasonable trier of fact could infer a causal connection.  See id. at 27.

The City argues that, in spite of the temporal proximity between Novella's complaint and her co-workers' conduct, Detective Novella cannot establish a causal connection between her protected activity and her co-workers' behavior because Detective Novella switched units soon after her complaint, and therefore does not have a basis for comparison between the two units.  See Mem. Supp. Mot. Summ. J. at 10–11.

In addition, the City argues that with the exception of Sergeant Johannes, whom Detective Novella complained to directly, Detective Novella presents no evidence that the co-workers she claims retaliated against her even knew of her complaint.  See Mem. Supp. Mot. Summ. J. at 5.  In response, Detective Novella asserts that since Sergeant Criscuolo and Lieutenant Velleca often referred to her as "a complainer"—and the only complaint she made was with internal affairs—a trier of fact could reasonably conclude they knew of the complaint.  See Mem. Opp. Mot. Summ. J. at 21.

Additionally, Novella testified at her deposition that Lieutenant Velleca and Sergeant Johannes worked together on patrol, and then Velleca brought Johannes to the Tactical Narcotics Unit with him. See Novella Depo. at 176. Detective Novella also states that it was common for rumors to travel, and several people questioned her regarding her complaint. See id.

A reasonable jury could conclude, based on these facts, that information regarding Detective Novella's complaint was not kept confidential, and her co-workers in both her old and her new units were aware of Detective Novella's internal affairs complaint. Given the plaintiff's minimal burden of proof in establishing a prima facie case and the court's obligation to construe the facts in favor of the non-movant, Detective Novella has raised a material issue of fact. A jury could reasonably conclude that those co-workers who were allegedly harassing Detective Novella knew of her internal affairs complaint and the fact that this conduct began shortly after she filed her complaint is sufficient to establish a causal connection between the complaint and the conduct.

## V. CONCLUSION

For the foregoing reasons, the court denies defendant's Motion for Summary Judgment (Doc. No. 27).

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 28th day of July, 2011.

                                              /s/ Janet C. Hall
                                              Janet C. Hall
                                              United States District Judge